JUSTIN D. SANTAGATA, ESQ. – ATTY ID 000822009
KAUFMAN, SEMERARO, & LEIBMAN, LLP
2 Executive Drive, Suite 530
Fort Lee, New Jersey 07024
T: 201-947-8855
F: 201-947-2402
E: jsantagata@northjerseyattorneys.com
Attorneys for Jacob Rabinowitz

| | |
|---|---|
| JACOB RABINOWITZ,<br><br>        Plaintiff,<br><br>v.<br><br>ST. JOSEPH'S REGIONAL HIGH SCHOOL, ROMAN CATHOLIC ARCHDIOCESE OF NEWARK,<br><br>        Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>CIVIL ACTION<br><br>**AMENDED COMPLAINT FOR DISCRIMINATION AND UNLAWFUL RETALIATION** |

Pursuant to Fed.R.Civ.P. 8, Plaintiff Jacob Rabinowitz alleges as follows.

## PARTIES

1.   Plaintiff Jacob Rabinowitz is a former teacher at Defendant St. Joseph's Regional High School ("**St. Joseph's**") in Montvale, New Jersey.

2.   St. Joseph's is a private high school organized under New Jersey law and is wholly-owned and controlled by Defendant Roman Catholic Archdiocese of Newark. The registered agent for Defendants is Franklyn M. Casale, 31 Mulberry Street in Newark, New Jersey.

1

## JURISDICTION AND VENUE

3. The Court has federal subject matter jurisdiction because this complaint alleges violation of Title VII of the Federal Civil Rights Act ("**Title VII**"), 42 U.S.C. §§ 2000e, et seq., Mr. Rabinowitz was issued a "right to sue letter" under Title VII on September 14, 2018, and he has filed a complaint in federal court within 90 days of receipt of such letter.

4. The Court has supplemental jurisdiction over Mr. Rabinowitz's state law claims because they arise from the same set of operative facts as his federal claim— his employment with St. Joseph's.

5. Venue is proper in the Court because a substantial part of the events or omissions giving rise to Mr. Rabinowitz's claims occurred in Bergen County, which is located within the Newark Vicinage of the United States District Court for the District of New Jersey.

## FACTUAL BACKGROUND

6. Mr. Rabinowitz was hired by St. Joseph's for the 2017-2018 school year as a pre-calculus teacher. On his first day of class, his classroom had a swastika carved into the blackboard.

7. The swastika was unmistakable and could not have gone unnoticed by St. Joseph's administration or the two other teachers with whom Mr. Rabinowitz shared his classroom.



8. For several weeks of the school year, Mr. Rabinowitz's students threw coins at him whenever his back was turned in an obvious reference to Jewish stereotypes.

9. In addition to the ever-present swastika on the blackboard, the students' desks in Mr. Rabinowitz's classroom were frequently adorned with swastikas and anti-Jewish language. One student wrote on his desktop "sechs millionen waren nur der anfang," which translates to "six million was just the beginning."



10. Another student announced to the class that his favorite scene in

*Schindler's List* was a particularly gruesome murder of a Jewish woman. The student then acted out the murder in class.

11. For the school year, St. Joseph's only provided Mr. Rabinowitz with 30-year-old textbooks and no "smart board"; other teachers received better materials.

12. In February 2018, Mr. Rabinowitz received a negative performance review from St. Joseph's that stated that he did not "engage" the students.

13. St. Joseph's performance review of Mr. Rabinowitz was scheduled for a day on which the students' sole focus was to prepare for a test the next day. Mr. Rabinowitz submitted a written response to the review the week of March 20, 2018. As part of his response, he recited the litany of anti-Semitic and other discriminatory behavior he experienced as a teacher at St. Joseph's.

14. In a March 26, 2018 letter to Mr. Rabinowitz, St. Joseph's principal, Michael Bruno, stated in no uncertain terms that the students' anti-Semitic and other discriminatory behavior was Mr. Rabinowitz's fault. Mr. Bruno had conducted the performance review of Mr. Rabinowitz himself and watched as Mr. Rabinowitz taught his class while *staring at a swastika on the blackboard*. While Mr. Bruno denied any prior knowledge of the anti-Semitic and other discriminatory behavior, he suggested that St. Joseph's administration was aware of it and that Mr. Rabinowitz was to blame for failing to fix it:

> All of the other points in your letter seem to be a direct reflection of your inability to manage a classroom. This is also the single biggest reason that the CP Geometry section was taken away from you in the first place; which at the time you were extremely grateful for. This was also decided after several attempts by the administration to intervene in the classroom, and after you were made aware of a myriad of parent and student complaints both about your instruction and the classroom environment.

4

The "all other points" line in the letter is a tone-deaf and antiseptic reference to the students' anti-Semitic and other discriminatory behavior. Mr. Bruno stated in this letter that "issue[s] with a student" should "first be reported" to the vice principal, "as has been the school policy all year."

15. Based on Mr. Bruno's March 26, 2018 letter and the presence of anti-Semitic writing in Mr. Rabinowitz's classroom throughout the school year, St. Joseph's administration was aware of at least latent anti-Semitism and other discriminatory animus in Mr. Rabinowitz's classes. Regardless, this anti-Semitism and other discriminatory animus was adopted by St. Joseph's in its termination of Mr. Rabinowitz.

16. On March 29, 2018— two days after Mr. Bruno's letter and less than a week after Mr. Rabinowitz's written response to Mr. Bruno's observation— St. Joseph's gave Mr. Rabinowitz notice that it would not renew his employment for the following school year.

17. St. Joseph's sent the notice of non-renewal to Mr. Rabinowitz much earlier than required under the applicable bargaining agreement, which only requires it to be sent by approximately April 25. St. Joseph's has never suggested to Mr. Rabinowitz that it sent similarly early notices of non-renewal to other teachers.

18. At the time of its notice of non-renewal to Mr. Rabinowitz, St. Joseph's had inexplicably not removed the swastika from his classroom. It was left there to linger for when Mr. Rabinowitz received his notice that he would not be renewed for the following school year.

5

19. On April 20, 2018, Mr. Rabinowitz emailed Mr. Bruno to request a meeting to discuss his non-renewal and that his lawyer be present. At the time of the email, the swastika was still in Mr. Rabinowitz's classroom. Mr. Bruno refused any meeting with a lawyer present.

20. The swastika was not removed from Mr. Rabinowitz's classroom until April 23, 2018, when Mr. Bruno responded to Mr. Rabinowitz's April 20, 2018 email. In the response, Mr. Bruno inexplicably stated that "if you wish to do so, you may report your complaints about alleged harassment and/or hostile work environment to the Archdiocese of Newark Office of Human Resources," which contradicts Mr. Bruno's March 26, 2018 letter. Mr. Bruno's response suggests that St. Joseph's has no control over its school or it was not interested in addressing discrimination or a hostile work environment. Nothing in St. Joseph's employment manual or collective bargaining agreement refers discrimination or a hostile work environment to the "archdiocese" (other than allegations of assault against children by priests and clergy). Even if the manual or agreement did refer discrimination or a hostile work environment to the "archdiocese," it would be an unreasonable policy that would do nothing to remedy discrimination or hostile work environment at the site at which either happened.

## COUNT ONE: RELIGIOUS DISCRIMINATION
### (Title VII to the Federal Civil Rights Act, New Jersey Law Against Discrimination)

21. Mr. Rabinowitz repeats and re-alleges paragraphs of 1-20 of this complaint as if fully set forth in this count.

6

22. Title VII and the New Jersey Law Against Discrimination ("**LAD**"), N.J.S.A. 10:5-1, et seq., prohibited St. Joseph's from taking adverse action against Mr. Rabinowitz based on his religion or from treating him differently based predominantly on his religion.

23. Under the cat's paw theory of discrimination, an employer is liable if it takes adverse action against an employee based on complaints or information that it knew or should have known were based on discriminatory animus.

24. In terminating Mr. Rabinowitz, St. Joseph's both adopted the animus of Mr. Rabinowitz's students and doubled-down on it. Just as an example, once St. Joseph's was notified that Mr. Rabinowitz, a Jewish teacher, had to attend his class every day with a swastika on his blackboard, St. Joseph's left the swastika up while it told Mr. Rabinowitz he would not be renewed as a teacher and that any anti-Semitism in his class was his fault.

## COUNT TWO: UNLAWFUL RETALIATION
### (Title VII, LAD)

25. Mr. Rabinowitz repeats and re-alleges paragraphs of 1-24 of this complaint as if fully set forth in this count.

26. Title VII and LAD precluded St. Joseph's from taking adverse action against Mr. Rabinowitz because he complained about unlawful unemployment practices at St. Joseph's, such as a hostile work environment.

27. The timing of Mr. Rabinowitz's notice of non-renewal is sufficient evidence alone to suggest that St. Joseph's took adverse action against him because of his complaints to St. Joseph's about anti-Semitism and other discriminatory

7

behavior. Within a week of his complaints to St. Joseph's, St. Joseph's sent him a non-renewal notice, far earlier than it was required to send the notice.

## COUNT THREE: HOSTILE WORK ENVIRONMENT
### (Title VII, LAD)

28. Mr. Rabinowitz repeats and re-alleges paragraphs of 1-27 of this complaint as if fully set forth in this count.

29. Title VII and LAD prohibited St. Joseph's from permitting or failing to remedy a hostile work environment against Mr. Rabinowitz, who suffered intentionally, pervasive, and regular harassment because his religion.

30. In fact, St. Joseph's was so lax in its approach to the hostile work environment that it allowed a swastika to remain on Mr. Rabinowitz's blackboard after he complained about it. Any reasonable person would understand a swastika's meaning to a Jewish individual like Mr. Rabinowitz, but St. Joseph's left the swastika up while it sent Mr. Rabinowitz a notice of non-renewal. In addition, St. Joseph's response to Mr. Rabinowitz's complaints that his students were anti-Semitic was inexplicably to refer Mr. Rabinowitz to the "archdiocese."

## DEMAND FOR RELIEF

Pursuant to counts one through three, Mr. Rabinowitz demands relief as follows:

(a) Compensatory damages under Title VII and LAD;

(b) Damages for emotional distress;

(c) Punitive damages;

(d) Attorneys' fees and costs of suit;

8

(e)   Such other relief as the court deems equitable and just.

## JURY DEMAND PURSUANT TO FED.R.CIV.P. 38(b)

Mr. Rabinowitz demands trial by jury on all issues so triable.

Dated:  November 30, 2018

_____
JUSTIN D. SANTAGATA, ESQ.