JUSTIN D. SANTAGATA, ESQ. – ATTY ID 000822009
KAUFMAN, SEMERARO, & LEIBMAN, LLP
2 Executive Drive, Suite 530
Fort Lee, New Jersey 07024
T: 201-947-8855
F: 201-947-2402
E: jsantagata@northjerseyattorneys.com
Attorneys for Jacob Rabinowitz

| | |
|---|---|
| JACOB RABINOWITZ,<br><br>      Plaintiff,<br><br>v.<br><br>ST. JOSEPH'S REGIONAL HIGH SCHOOL, ROMAN CATHOLIC ARCHDIOCESE OF NEWARK,<br><br>      Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>2:18-cv-16498<br><br>CIVIL ACTION<br><br>**JOINT PROPOSED DISCOVERY PLAN** |

1. Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

   **Justin D. Santagata, Esq.**
   **KAUFMAN, SEMERARO, & LEIBMAN, LLP**
   **2 Executive Drive, Suite 530**
   **Fort Lee, New Jersey 07024**
   **T: 201-947-8855**
   **F: 201-947-2402**
   **Attorneys for Plaintiff**

   **Christopher H. Westrick, Esq.**
   **CARELLA, BYRNE, ET AL., P.C.**
   **5 Becker Farm Road**
   **Roseland, New Jersey 07068-1739**
   **T: 973-994-1700**
   **F: 973-994-1744**
   **Attorneys for Defendants**

2. Set forth a brief description of the case, including the causes of action and defenses asserted.

   **Plaintiff's Position:** Plaintiff Jacob Rabinowitz was a non-tenured St. Joseph's Regional High School ("St. Joe's") for the 2017-2018 school year. He taught pre-calculus. St. Joe's is wholly-owned and controlled by the Roman Catholic Archdiocese of Newark and does not appear to have any separate existence.

1

On Mr. Rabinowitz's first day at St. Joe's, there was a swastika carved into the blackboard. Mr. Rabinowitz identifies as Jewish and is perceived as Jewish. Mr. Rabinowitz was apparently the only Jewish teacher at St. Joe's. Throughout the school year, Mr. Rabinowitz was subject to increasing harassment from his students, including: (a) having coins thrown at him behind his back, in reference to Jewish stereotypes; (b) being asked if he was celebrating Hitler's birthday; (c) increasing numbers of swastikas drawn around his classroom; (d) the words "6 million was only the beginning" written in German on a desk; and (e) having a student re-enact in class a gruesome murder of Jewish woman from the film "Schindler's list," with the student jumping on top of his desk and mimicking looking down the sight of a rifle.

At various points during the school year, Mr. Rabinowitz was reviewed by St. Joe's administration personnel, who could not have missed the swastikas adorned in the classroom (and which apparently appeared nowhere else at St. Joe's). After a negative review in February 2018, Mr. Rabinowitz complained in writing to St. Joe's administration on March 20, 2018 that he was subjected to pervasive anti-Semitic discrimination from the students that affected his ability to teach. In response, St. Joe's principal wrote that the students' behavior was Mr. Rabinowitz's fault because he supposedly could not control his class. By March 29, 2018, St. Joe's had given Mr. Rabinowitz notice he would not be renewed as a teacher. Under St. Joe's collective bargaining agreement, such notice of non-renewal did not have to be sent until late April 208. St. Joe's stated in writing to Mr. Rabinowitz that he believed he was subjected to a hostile work environment or discrimination, he should take it up with the "Archdiocese."

Defendant's Position:

Plaintiff was a new teacher at St. Joe's in September 2017. In his cover letter applying for employment, he emphasized that he was a "Catechumen", a convert to Catholicism who was awaiting the sacrament of Baptism. Shortly after school began, students and parents began complaining about Plaintiff. This required the intervention of St. Joe's administration. One class was taken away from Plaintiff, for which he thanked the principal. Despite regular interactions with St. Joe's administration during this period, he never once reported that there was a small swastika on his blackboard or that students had engaged in any anti-Semitic behavior.

2

Plaintiff received a negative performance evaluation in December 2017 – before he ever registered a single complaint about a swastika or anti-Semitic behavior. He acknowledged the criticisms in this evaluation as "accurate and insightful". He had meetings with the principal in February 2018 regarding his poor performance, even sending an email to the principal where he recognized his job may be in jeopardy. As of this time, Plaintiff still had never reported any anti-Semitic behavior. He received a second negative evaluation in February 2018. Plaintiff waited nearly six weeks before responding to the second evaluation. He then reported for the very first time a swastika in his classroom and anti-Semitic behavior by his students.

Plaintiff was notified in accordance with his collective bargaining agreement that his contract would not be renewed for the following school year, due to his performance deficiencies. Plaintiff was not the only teacher who received such a notice. He was also not the only Jewish teacher at St. Joe's at the time.

Plaintiff was informed by St. Joe's about the procedures for initiating investigations of his complaints about students and the work environment. He availed himself of the former, which resulted in an investigation, interviews of students, and a warning to all students that anti-Semitic behavior is not tolerated at St. Joe's. Plaintiff never contacted Human Resources to report the perceived hostile work environment. Plaintiff never complained about continued anti-Semitic behavior after the investigation and warning.

After his employment concluded, Plaintiff filed a complaint of religious discrimination with the Equal Employment Opportunity Commission. Two weeks later, the EEOC summarily dismissed the complaint as unfounded, without even receiving a response from St. Joseph's.

Have settlement discussions taken place? Yes \_\_\_\_ No \_\_X\_\_

(a) What was plaintiff's last demand?

    (1) Monetary demand: $_____
    (2) Non-monetary demand: _____

(b) What was defendant's last offer?

    (1) Monetary offer: $ _____
    (2) Non-monetary offer: _____

3

3. The parties [have __X__ have not _____] met pursuant to Fed.R.Civ.P. 26(f):

4. The parties [have _____ have not __X__] exchanged the information required by Fed.R.Civ.P. 26(a)(1). If not, state the reason therefore.

   **The parties will exchange their initial disclosures pursuant to Fed.R.Civ.P. 26(a)(1) no later than two (2) weeks following the initial conference.**

5. Explain any problems in connection with completing the disclosures required by Fed.R.Civ.P. 26(a)(1). **None anticipated at this time.**

6. The parties [have _____ have not __X__] conducted discovery other than the above disclosures. If so, describe.

   **The parties will propound written discovery requests no later than one (1) month following the initial conference.**

7. Proposed joint discovery plan:

   (a) Discovery is needed on the following subjects:

   - **Complaints from students or parents to St. Joe's about Mr. Rabinowitz**
   - **St. Joe's knowledge or reason to know of anti-Semitic behavior among the students, particularly in Mr. Rabinowitz's classes**
   - **St. Joe's remedial response, if any, to anti-Semitism**
   - **Anti-Semitic behavior among the students at St. Joe's**
   - **Evaluations of Mr. Rabinowitz**
   - **Plaintiff's lack of complaints from September 2017 through March 2018**
   - **Plaintiff's job performance and employment history**

   (b) Discovery [should _____ should not __X__] be conducted in phases or be limited to particular issues. Explain.

   (c) Proposed schedule:

4

(1) Fed.R.Civ.P. 26 disclosures will be exchanged within **two (2) weeks** of the initial scheduling conference with the Court, if not prior thereto;

(2) To the extent necessary, an e-discovery conference pursuant to L.Civ.R. 26.1(d) will be conducted within **two (2) weeks** of the initial scheduling conference with the Court, if necessary;

**Not clear whether this is necessary without knowing how St. Joe's stores information and documents and what kind of programs the administration, teachers, and students use to communicate.**

(3) Service of initial written discovery **no later one (1) month following the initial conference**;

(4) Maximum of __25__ Interrogatories by each party to each other party;

(5) Maximum of __10__ depositions to be taken by each party;

(6) Motions to amend or to add parties to be filed by **May 1, 2019**;

(7) Factual discovery to be completed by **October 1, 2019**;

(8) Affirmative expert reports due on **January 5, 2020**;

(9) Rebuttal expert reports due on **February 28, 2020**;

(10) Expert depositions to be completed by **May 1, 2020**;

(11) Dispositive motions to be served within 60 days of completion of discovery, or at a date to be determined following the close of fact and expert discovery.

(d) Set forth any special discovery mechanism or procedure requested. **We need to confer with the Court on how the Court wants depositions to be conducted of students at St. Joe's.**

(e) A pretrial conference may take place within 30 days of the outcome of dispositive motions following the completion of fact and expert discovery.

(f) Trial date: **Within 60 days of the outcome of dispositive motions following the completion of fact and expert discovery**

(g) (__X__ Jury Trial; _____ Non-Jury Trial).

8. Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc)? Yes _____ No __X__. If so, please explain.

9. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? Yes _____ No _____.

    **Maybe. See paragraph 7(c)(2).**

    If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

    **The parties will meet and confer regarding the appropriate scope of the search for electronically stored information, including the sources to be considered for such searches. Any and all discovery of electronically stored information shall be limited to reasonably accessible sources as defined in Fed.R.Civ.P. 26(b)(2)(B), unless otherwise ordered by the Court in a specific circumstance. Regarding form of production, unless otherwise agreed to by the parties or ordered by the Court, electronically-stored information will, depending on volume, be produced in paper format or as .PDF images, except where the original electronically stored-information contains information that cannot be produced in paper or .PDF form.**

10. Do you anticipate entry of a Discovery Confidentiality Order? See L.Civ.R. 5.3(b) and Appendix S.

    **Yes. The parties will stipulate and agree to a confidentiality agreement and order tracking the language of Appendix S of the District of New Jersey's Local Rules.**

11. Do you anticipate any discovery problem(s) not listed above? Describe. Yes _____ No __X__.

12. State whether this case is appropriate for voluntary arbitration (pursuant to L. Civ. R. 01.1 or otherwise) or mediation (pursuant to L.Civ.R. 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

6

**No. As an employment discrimination case this matter is not well suited for arbitration and Defendants will not consent to arbitration.**

13. Is this case appropriate for bifurcation? Yes ___ No ___

   **Maybe.**

14. An interim status/settlement conference (with clients in attendance), should be held: **The parties are amenable to participating in a settlement conference before the Court following an exchange of paper discovery.**

15. We [do ___ do not __X__] consent to the trial being conducted by a magistrate judge.

By: s/ Justin D. Santagata, Esq.
   Justin D. Santagata, Esq.
   KAUFMAN SEMERARO & LEIBMAN LLP
   2 Executive Drive, Suite 530
   Fort Lee, New Jersey 07024
   T: 201-947-8855
   F: 201-947-2402
   Attorney for Plaintiff

By: s/ Christopher H. Westrick, Esq.
   Christopher H. Westrick, Esq.
   CARELLA, BYRNE, ET AL., P.C.
   5 Becker Farm Road
   Roseland, New Jersey 07068-1739
   T: 973-994-1700
   F: 973-994-1744
   Attorneys for Defendants

Dated: February 1, 2019